958 So.2d 241 (2007)
Tommie Lee WHITE, Sr., Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-00721-COA.
Court of Appeals of Mississippi.
May 29, 2007.
*242 Belinda J. Stevens, Jackson, attorney for appellant.
Office of the Attorney General by Deshun Terrell Martin, attorney for appellee.
Before KING, C.J., IRVING and ROBERTS, JJ.
ROBERTS, J., for the Court.

STATEMENT OF THE CASE
¶ 1. On November 13, 2002, there was an altercation between Tommie Lee White, Sr. and Lloyd Jones at the home of Geraldine Shaffer that resulted in the stabbing of Jones, and subsequent arrest of White. Following a trial, White was found guilty of aggravated assault and sentenced to twenty years in the custody of the Mississippi Department of Corrections. After the trial court denied his motion for new trial, White brought this appeal. He raises the following issues:
I. THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
II. WHETHER THE STATE COMMITTED REVERSIBLE ERROR DURING ITS CLOSING ARGUMENT BY ARGUING FACTS NOT IN EVIDENCE AND WITH IMPROPER REMARKS THAT APPEALED TO THE BIAS AND PREJUDICE OF THE JURORS.
III. WHETHER THE CUMULATIVE EFFECT OF THE ABOVE ERRORS DENIED THE APPELLANT A FUNDAMENTALLY FAIR TRIAL.
Finding no error, we affirm.

STATEMENT OF THE FACTS
¶ 2. Ed Warren, police chief of Bentonia at the time, responded to a complaint of domestic violence at Shaffer's house on November 13, 2002. Warren testified that White was living with Shaffer at this time and Jones used to rent the garage apartment behind Shaffer's house. Upon arriving, he discovered that Shaffer was the only individual still present and that she had bruises on her face. Warren testified that after questioning her regarding the dispute and her injuries, his only suspect was White. Further, he stated that after walking through the house he saw that the bed was broken and found a broken radio and a knife with blood covering its blade. Warren then called the Yazoo County Sheriff's Department for assistance.
¶ 3. Maurice Shaffer, a patrolman with the Yazoo County Sheriff's Department at the time of the incident, arrived and began to inspect the scene and collect evidence. He noted that Ms. Shaffer was the only individual present, other than law enforcement, when he arrived. He testified that he also spoke with Ms. Shaffer when he arrived and, as a result, identified White as a suspect. He then identified pictures he took during his investigation. These included a picture of a radio used in the scuffle, pictures of the bruises on Ms. Shaffer's face and a picture of the knife *243 used. Shaffer then testified that he collected the knife from Ms. Shaffer's home and packaged it with a description of "one white-handled Dexter Russell knife with a five-inch blade." When he examined the knife during trial he testified that there appeared to be dried blood on the blade, but would later testify during cross-examination that the knife was never tested for blood or fingerprints.
¶ 4. Upon completing his initial investigation at Ms. Shaffer's home and learning that Jones had been transported to the University Medical Center in Jackson for treatment, Deputy Shaffer visited Jones at UMC and questioned him regarding the assault. Deputy Shaffer testified that before he left, however, White returned to Ms. Shaffer's home and was arrested. Deputy Shaffer testified that Jones told him White came into the house and hit him in the head with the radio and attempted to strike him with a broom handle. Deputy Shaffer further stated that Jones told him White went to the kitchen to get a knife and exclaimed that he was going to kill Jones. Lastly, Jones, according to Deputy Shaffer's testimony, stated he and White fought and Jones wrestled him to the bed having his finger cut and being stabbed in the side in the process. Pictures of each wound were identified by Deputy Shaffer during trial. Deputy Shaffer would also testify that he found blood on the bed, kitchen counter, radio, a door frame, a chair and a pair of pants.
¶ 5. At trial, when asked who stabbed him, Jones testified that it was White. Jones testified that he was renting from Ms. Shaffer in November of 2002. He stated that when he first went into the house, White was in bed. He continued that he was in the kitchen when White kicked in the door and stated, "I tried to kill you one time. . . . I'm going to kill you this time." Jones testified that White hit and pushed Ms. Shaffer against the wall then began attacking him. Jones continued that he eventually overpowered White and threw him on a bed, but not before White stabbed him while he was coming through the hall. Jones testified that once he escaped, an ambulance took him to UMC where he was informed that one of his lungs collapsed. He elaborated that he is still having trouble because of it.
¶ 6. Though not admitted as an exhibit, during cross-examination of Jones, defense counsel made reference to a police report drafted by Deputy Shaffer. The report stated that Jones was lying in bed when White stabbed him; however, Jones testified he never said that. Additionally, defense counsel asked whether the report was correct that Jones told Deputy Shaffer that he was hit with a radio and a stick. Jones responded that he was not hit with either, but explained that White did forcefully take a radio from his possession.
¶ 7. Ms. Shaffer testified that no one was staying at her house at the time of the altercation, but that White did stay there at one time and Jones was just visiting. She stated she never spoke to Deputy Shaffer, did not remember having photographs of her bruises taken, did not have a radio at the time of the incident and did not see the fight. She explained that she was in the living room when the fight took place and in the bedroom. On cross-examination, the State questioned Ms. Shaffer about White assaulting her in an attempt to alter her testimony. She testified that White did hit her and left bruises on her legs, but not because of her testimony and not the night of the fight. However, after being assured that she was safe, Ms. Shaffer testified that White did stab Jones. Finally, on redirect Ms. Shaffer again stated that she did not see the fight.
¶ 8. White was the final individual to testify. He stated that when he came *244 home Jones was waiting for him. According to his testimony, after being informed by Ms. Shaffer that she asked Jones to leave but he refused, he told Jones to leave. White testified that at this point he hit Jones with a radio from the dresser when Jones retrieved a knife from his pocket. Jones then fell back on the bed, breaking it, and, after pushing White back, ran out of the house through the kitchen. White explained that Ms. Shaffer was standing behind the kitchen door and as Jones exited the kitchen he swung the door open and it hit her. He then testified that he stayed at the house until Warren arrived, at which time he spoke with him. When asked about the bruises on Ms. Shaffer's legs, White explained that they were not a result of any attempted intimidation, but that he unintentionally kicked her during Christmas.

PROCEDURAL HISTORY
¶ 9. White was indicted on May 28, 2004, by the grand jury of Yazoo County of aggravated assault in violation of Mississippi Code Annotated Section 97-3-7(2)(a) (Rev.2004). A trial was held on April 3, 2006, in the Circuit Court of Yazoo County and White was found guilty. White was subsequently sentenced to twenty years in the custody of the Mississippi Department of Corrections. White then filed his motion for a new trial or, in the alternative, for judgment notwithstanding the verdict raising the issue of whether the verdict of the jury was against the overwhelming weight of the evidence. His motion was denied and White subsequently appealed. Finding no error, we affirm.

ANALYSIS
I. A PRELIMINARY MATTER
¶ 10. White's indictment charged him with a violation of section 97-3-7(2)(a) which states that "a person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another, or causes such injury purposefully, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." Miss.Code Ann. § 97-3-7(2)(a) (Rev.2004). The language used in the indictment describing the crime states that White "unlawfully, willfully, feloniously, purposefully, and knowingly caused bodily injury to Lloyd Jones with a deadly weapon, to-wit: by stabbing him with a knife." Such language is more in line with section 97-3-7(2)(b). "The primary purpose of an indictment is to notify an accused of the charges against him in order to allow him to prepare an adequate defense." Brown v. State, 944 So.2d 103(¶ 8) (Miss.Ct.App. 2006). Furthermore, "the incorrect citation of a statute number does not alone render an indictment defective, but rather is `mere surplusage' and not prejudicial to a defendant." Id. (quoting Evans v. State, 916 So.2d 550(¶ 6) (Miss.Ct.App.2005)). As such, this discrepancy is of no moment.
II. THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
¶ 11. White argues that "the State has failed to present sufficient and consistent evidence to establish beyond a reasonable doubt that the appellant committed the act of aggravated assault," citing the "inconsistent statement of the alleged victim, the repudiation of the incident report and the lack of testing of any of the physical evidence." In order to prove that White committed aggravated assault, the State was required to prove that White purposefully or knowingly caused bodily injury to Jones with a deadly weapon. Miss.Code Ann. § 97-3-7(2)(b) (Rev.2006). It is not entirely clear whether White challenges the weight of the evidence alone, or *245 additionally attacks the sufficiency of the evidence. As such, we will address each issue independently.
A. Sufficiency of the Evidence
¶ 12. In reviewing the sufficiency of evidence, the supreme court has stated:
that in considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the critical inquiry is whether the evidence shows "beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." However, this inquiry does not require a court to `ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (citations omitted) (emphasis in original). Should the facts and inferences considered in a challenge to the sufficiency of the evidence "point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is for the appellate court to reverse and render. Edwards v. State, 469 So.2d 68, 70 (Miss.1985) (citing May v. State, 460 So.2d 778, 781 (Miss.1984)); see also Dycus v. State, 875 So.2d 140, 164 (Miss. 2004). However, if a review of the evidence reveals that it is of such quality and weight that, "having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient. Edwards, 469 So.2d at 70; see also Gibby v. State, 744 So.2d 244, 245 (Miss.1999).
Bush v. State, 895 So.2d 836(¶ 16) (Miss. 2005). Without restating the testimony detailed above in its entirety, it is apparent that there were discrepancies in the testimony offered at trial. These include inconsistencies in Jones's testimony from Deputy Shaffer's report, testimony from Ms. Shaffer that she did not see the fight but nonetheless stated that White did stab Jones and inconsistencies in White's version of events from the testimony of Ms. Shaffer, Deputy Shaffer, Warren and, of course, Jones. However, "the jury has the duty to determine the impeachment value of inconsistencies or contradictions as well as testimonial defects of perception, memory and sincerity." Noe v. State, 616 So.2d 298, 303 (Miss.1993) (quoting Jones v. State, 381 So.2d 983, 989 (Miss.1980)); see also Curry v. State, 939 So.2d 785(¶ 23) (Miss.2006) (stating that "determining the credibility of witness testimony is squarely within the province of the fact-finder."). Jones unequivocally stated that White stabbed him with a knife he retrieved from the kitchen. Ms. Shaffer echoed this statement, although she claims she never saw the fight. However, both Warren and Deputy Shaffer testified that after speaking with Ms. Shaffer at her home immediately after the fight they came to the conclusion that White was the only suspect. After viewing this evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of the crime *246 beyond a reasonable doubt. Therefore, this issue is without merit.
B. Weight of the Evidence
¶ 13. The supreme court has recently reiterated the standard of review this Court employs when considering whether a verdict was against the weight of the evidence as follows:
When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. Herring v. State, 691 So.2d 948, 957 (Miss.1997). We have stated that on a motion for new trial, the court sits as a thirteenth juror. The motion, however, is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict. Amiker v. Drugs For Less, Inc., 796 So.2d 942, 947 (Miss.2000). However, the evidence should be weighed in the light most favorable to the verdict. Herring, 691 So.2d at 957. A reversal on the grounds that the verdict was against the overwhelming weight of the evidence, "unlike a reversal based on insufficient evidence, does not mean that acquittal was the only proper verdict." McQueen v. State, 423 So.2d 800, 803 (Miss.1982). Rather, as the "thirteenth juror," the court simply disagrees with the jury's resolution of the conflicting testimony. Id. This difference of opinion does not signify acquittal any more than a disagreement among the jurors themselves. Id. Instead, the proper remedy is to grant a new trial.
Bush, 895 So.2d at (¶ 18).
¶ 14. Viewing the evidence and testimony detailed above in a light most favorable to the verdict, we cannot say that to allow it to stand would sanction an unconscionable injustice.
III. WHETHER THE STATE COMMITTED REVERSIBLE ERROR DURING ITS CLOSING ARGUMENT BY ARGUING FACTS NOT IN EVIDENCE AND WITH IMPROPER REMARKS THAT APPEALED TO THE BIAS AND PREJUDICE OF THE JURORS.
¶ 15. It has been established "that to preserve an objection to alleged improper remarks by counsel during closing argument, the complaining party must not only make a contemporaneous and specific objection to the remarks, but must also obtain a definitive ruling from the trial court on his objection and must request corrective action." Moffett v. State, 938 So.2d 321(¶ 22) (Miss.Ct.App.2006) (quoting Rials v. Duckworth, 822 So.2d 283, 287(¶ 22) (Miss.2002)). White's counsel neither made an objection during the duration of the State's closing, nor raised this issue in his motion for new trial. As a result, this issue is waived for appeal.
IV. WHETHER THE CUMULATIVE EFFECT OF THE ABOVE ERRORS DENIED THE APPELLANT A FUNDAMENTALLY FAIR TRIAL.
¶ 16. In White's final issue, he argues that the cumulative effect of the supposed errors he raised warrants reversal of his conviction. As was the case with the previous issue, this issue was never raised before the trial court. As such, the issue cannot now be raised on appeal. Gibson v. State, 731 So.2d 1087(¶ 30) (Miss.1998); Price v. State, 749 So.2d 1188(¶ 31) (Miss. Ct.App.1999).
*247 ¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF YAZOO COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO YAZOO COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE AND CARLTON, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.