MAXWELL, J.,
for the Court:
¶ 1. A jury found Carson Johnson guilty of burglary of a dwelling and possession of a prohibited weapon by a convicted felon. The circuit judge sentenced Johnson to twenty years and ten years respectively for each charge, with the sentences ordered to run concurrently. Johnson appeals, alleging that a discovery violation, defective indictment, and fatally flawed jury instructions require reversal. We find no reversible error and affirm both convictions and sentences.
FACTS AND PROCEDURAL HISTORY
¶ 2. On the afternoon of January 7, 2009, Katherine Cestia stopped by the apartment of her flaneé, Lindsey Callón. The apartment is on the second floor of a building on Pearl Street in downtown Natchez, Mississippi. It shares a staircase with the law office of Barrett Martin. Cestia walked halfway up the stairs and saw a man on the landing outside of Callon’s apartment door. Cestia asked the man what he was doing. He told her he was going to Martin’s office to ask for work. Cestia saw the man collect something and walk down the stairs. As he walked past her, she noticed he was carrying one of *1211 Callon’s rifles, partially wrapped in a piece of cloth. Cestia told him, “You can’t take that. It doesn’t belong to you.” But the man responded, “I can take whatever I want,” then walked away.
¶ 3. Cestia called 911 and reported that “a black gentleman just walked into” her fiancé’s apartment “and stole a gun. He had baggy clothes. Shoes were untied, kind of flopping off. Scruffy, not well kept.” There was no sign of a break-in, but Cestia recalled the door to the apartment had been left unlocked that day because the housekeeper had just left. Approximately twenty minutes later, officers with the Natchez Police Department arrived and asked if Cestia could identify the burglar. The suspect was “pulled out of’ a patrol car, and Cestia identified Johnson as the man she had encountered on the staircase.
¶ 4. Johnson was not carrying anything when the police picked him up. But Lieutenant Craig Godbold testified that, immediately after Cestia identified him, Johnson told the police: “If you let me go, I will show you where the gun is.” Johnson directed the police to Memorial Park, approximately two blocks from Callon’s apartment, where the officers located the rifle under some trees. Cestia identified the gun as the one taken from Callon’s apartment — a Marlin .35 caliber rifle. Because it was deer season, the officers returned the gun to Callón after recording the rifle’s serial number.
¶ 5. An Adams County grand jury returned a two-count indictment against Johnson for Count I, burglary of a dwelling, and Count II, possession of a gun by a felon. The circuit judge ordered a mental evaluation of Johnson, who spent two months in the forensic unit at Whitfield State Hospital undergoing a competency evaluation.[1] Johnson was found competent to stand trial, and his trial began on March 2, 2010.
¶ 6. The day before trial, the circuit judge held a hearing on Johnson’s motion to suppress the rifle. Johnson argued because the rifle was returned to Callón, Johnson could not examine the evidence. He also claimed returning the gun destroyed the chain of custody. At this hearing, the State discussed Johnson’s statement made to Lt. Godbold about showing them the location of the rifle if they would let him go. Defense counsel claimed to be surprised by the statement, which was not included in the discovery the State provided. So Johnson moved to suppress the statement as well. The circuit judge denied both motions but directed the State provide Lt. Godbold’s “Supplemental Report” the next morning. The trial judge gave defense counsel an opportunity that morning to interview Lt. Godbold and consider the statement’s impact on the defense. But he denied Johnson’s motion for a continuance and subsequent motion for a mistrial, finding the late disclosure of the statement did not prejudice Johnson’s insanity defense.
¶ 7. At trial, Dr. John Montgomery, a psychiatrist, testified that Johnson was able to discern right from wrong at the time of the offense. Dr. Montgomery explained that Johnson had been diagnosed with “schizophrenia in the residual phase which means ... some of the symptoms have improved over time, and he’s kind of reached a stable level with his mental illness.”
¶ 8. Johnson, against his counsel’s advice, chose to testify. He stated he knew right from wrong and denied burglarizing Callon’s apartment. He claimed he found *1212 the rifle discarded by the side of a building, picked it up, and took it to the park. He also admitted he knew he was not supposed to have a firearm because he is a convicted felon.
¶ 9. The jury found Johnson guilty on both counts. The circuit judge sentenced Johnson to twenty years for burglary of a dwelling and ten years for possession of a prohibited weapon by a felon. The sentences were ordered to run concurrently. Johnson filed a motion for a new trial, which was denied. He timely appealed.
ANALYSIS OF THE ISSUES
¶ 10. Johnson argues the circuit judge erred: (1) by not granting his motion for a continuance or later request for a new trial due to the failure to disclose Lt. Godbold’s supplemental report during discovery; (2) by not granting a directed verdict or imposing a lesser sentence for Count I because the indictment charged him with “business burglary,” not “dwelling burglary”; and (3) by not ordering a new trial on Count II because he was never charged with possessing a “firearm,” and the jury was not properly instructed on this element of the offense.
¶ 11. Because the discovery violation did not prejudice Johnson’s insanity defense and the evidence of his guilt was overwhelming, we find the circuit judge did not abuse his discretion by denying Johnson’s motion for a continuance. And we find no errors in either count of the indictment. The charging document clearly notified Johnson he was accused of burglary of a dwelling and possession of a firearm by a convicted felon — despite not tracking the exact language of either statute.
¶ 12. Though we find the jury instruction on the weapon-possession count erroneously omitted the element “possession of a firearm,” Johnson’s possession of the rifle was undisputed at trial and proven by his own admission. Because we find beyond a reasonable doubt the jury would have found Johnson guilty on Count II absent the erroneous instruction, we find the jury-instruction error to be harmless.
I. Discovery Violation
¶ 13. Rule 9.04(1) of the Uniform Rules of Circuit and County Court governs the procedure a trial court must follow when considering discovery violations. “A violation of Rule 9.04 is considered harmless error unless it affirmatively appears from the entire record that the violation caused a miscarriage of justice.” Payton v. State, 897 So.2d 921, 942 (¶ 67) (Miss.2003) (citations omitted) (finding no abuse of discretion in denying continuance based on URCCC 9.04(1)). “The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court and will not be grounds for reversal unless shown to have resulted in manifest injustice.” Id
¶ 14. Rule 9.04(I)’s directives to the trial court are dependent on when the court learns of the discovery violation. If “at any time prior to trial,” the court learns of the discovery violation, it has the discretion to permit the discovery of the withheld material, grant a continuance, or enter any other appropriate order. URCCC 9.04(1). But “[i]f during the course of trial,” the State attempts to introduce evidence not timely disclosed over the defendant’s objection, the trial court must:
1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs, or' other evidence; and
2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or a mistrial, the court shall, in the interest *1213 of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
[[Image here]]
Id. at 9.04(I)(l)-(2).
¶ 15. Admittedly, the State’s disclosure of Lt. Godbold’s supplemental report on the eve of trial was untimely. Thus, the mandatory considerations of Rule 9.04(1) were triggered. The circuit judge acted appropriately by giving Johnson’s counsel an opportunity to examine the statement and interview Lt. Godbold. URCCC 9.04(I)(1). Defense counsel was made aware of Johnson’s statement the day before trial, and upon receiving a copy of the supplemental report describing the statement, he was given a few hours to review the report. While the one-day notice does not necessarily remedy the discovery violation, the Mississippi Supreme Court has noted: “ ‘By no means does a [discovery] violation mean invariably that the defendant will be entitled to a continuance until the next term of court. There will no doubt be cases where postponement of a day or two, or in some cases even an hour or two, will suffice.’ These determinations necessarily depend on the nature and extent of each discovery violation.” Fulks v. State, 18 So.3d 803, 806 n. 3 (Miss.2009) (quoting Reuben v. State, 517 So.2d 1383, 1386 (Miss.1987)). Here, there is no evidence of misconduct on the State’s part in withholding the supplemental report. Nor is there evidence the State was concealing the fact they would be calling Lt. Godbold as a witness.
¶ 16. When Johnson sought a continuance and mistrial, the circuit judge denied Johnson’s motions after determining Johnson was not unfairly surprised or unduly prejudiced by the statement. URCCC 9.04(I)(2). The circuit judge found the only surprise in the supplementary report was Johnson’s statement, not his role in the recovery of the rifle by the police. The initial report showed that Johnson, immediately after being positively identified by Cestia, accompanied the officers to Memorial Park, where the rifle was located. And the circuit judge failed to see how the statement prejudiced Johnson’s ability to put on his insanity defense, requiring a continuance.
¶ 17. “When a prosecutor reveals evidence on the eve of trial,” a continuance is only mandatory “when that evidence completely undercuts the defense’s theory of the case.” Fulks, 18 So.3d at 805 (¶ 10). Here, the circuit judge could not discern how evidence that Johnson knew the location of the gun undercut his defense that he did not know right from wrong at the time of the crime. The circuit judge noted that Johnson would be able to put on his insanity defense during his case-in-chief as well. Yet the record shows the defense presented no evidence during its case that Johnson was legally insane at the time of the crime. Thus, like the circuit judge, we fail to see how the admission of the statement undercut Johnson’s entire defense and rendered his trial preparation worthless.
¶ 18. After reviewing the record and assessing the overwhelming evidence of Johnson’s guilt, we find no manifest injustice in denying a continuance or mistrial. Even absent the challenged statement, there was eyewitness testimony placing the rifle in Johnson’s hands. Johnson even personally accompanied the police to the spot where he had hidden the rifle. He also admitted at trial that he possessed the firearm.
¶ 19. Based on this overwhelming evidence and because the circuit judge followed the appropriate remedial procedures in Rule 9.04(1), we find no abuse of discre *1214 tion and certainly no reversible error in its holding the discovery violation did not require a continuance or mistrial.
II. Count I — Burglary of a Dwelling House
¶ 20. Johnson claims Count I of his indictment, and the related jury instruction, were both ambiguous as.to the crime charged because, while his indictment cited Mississippi’s dwelling-house-burglary statute and included the elements of that crime, it also included a phrase from the “business burglary” statute. He argues his insufficient notice of the charged offense requires reversal or sentencing under the lesser crime of burglary of a business. In the alternative, he claims the indictment’s inclusion of this language saddled the State with an additional element to Count I that was neither proven at trial nor included in the jury instructions.
A. Indictment
¶ 21. We begin by noting that, though Johnson did not object to his indictment at trial, “challenges to the substantive sufficiency of an indictment are not waivable ... [and] may be first raised at anytime, including on appeal.” State v. Berryhill, 703 So.2d 250, 254 (¶ 17) (Miss.1997). Because Johnson’s allegation that the indictment failed to charge him with a crime raises a substantive challenge, we find no procedural bar to considering his claim. Id. (citing Copeland v. State, 423 So.2d 1333 (Miss.1982)).
¶ 22. Mississippi criminalizes the burglary of both “dwelling houses” and “other buildings” (i.e., businesses) but the burglary of a dwelling house carries a higher potential sentence. Compare Miss.Code Ann. § 97-17-23(1) (Supp.2011) (burglary of a dwelling house, “punish[able] by commitment to the custody the Mississippi of the Department of Corrections for not less than three (3) years nor more than twenty-five (25) years”) with § 97-17-33(1) (Rev. 2006) (burglary of a business, punishable by “imprison[ment] in the penitentiary not more than seven (7) years”).
¶ 23. The crime of burglary of a dwelling “has two essential elements, the unlawful breaking and entering [of a dwelling house] and the intent to commit some crime once entry has been gained.” Winston v. State, 479 So.2d 1093, 1095 (Miss.1985) (citations omitted); see also Miss.Code. Ann. § 97-17-23(1). By comparison, the elements of the crime of burglary of “other buildings” differ slightly. It requires “breaking and entering, in the day or night, any shop, store, booth, tent, warehouse, or other building or private room or office therein ... in which any goods, merchandise, equipment or valuable thing shall be kept for use, sale, deposit, or transportation, with intent to steal therein, or to commit any felony[.]”[2] Miss.Code Ann. § 97-17-33(1).
¶ 24. Count I of Johnson’s indictment charged that he:
did wilfully, unlawfully, feloniously and burglariously break and enter the dwelling house of Lindsey Callón wherein goods, merchandise and other valuable items were kept and stored, with the felonious intent of ... [Johnson] ... to wilfully, unlawfully, feloniously and bur-glariously take, steal and carry away said goods, merchandise and other valuable items and did in fact take, steal and carry away a rifle, and the personal property of Lindsey Callón, found and kept in said dwelling house.
(Emphasis added.) The indictment cited section 97-17-23, the dwelling-house burglary statute. It also clearly charged *1215 Johnson “did ... burglariously break and enter the dwelling house of Lindsey Cal-lón.”
¶ 25. Johnson takes issue with the inclusion of the above-italicized phrases, which are listed only in section 97-17-33(1), the other-buildings burglary statute, and not the dwelling-house burglary statute. Johnson claims the ambiguity over which statute he was being charged forced him to go to trial without notice of the charges against him. Alternatively, he argues the ambiguity requires he be re-sentenced under the lesser statute, citing Jenkins v. State, 888 So.2d 1171, 1174 (¶¶8-9) (Miss.2004).
¶ 26. We disagree. The “purpose of an indictment is to provide the accused reasonable notice of the charges against him so that he may prepare an adequate defense.” Brawner v. State, 947 So.2d 254, 265 (¶ 31) (Miss.2006) (citing Brown v. State, 890 So.2d 901, 918 (¶ 61) (Miss.2004)). An indictment must contain “the essential facts constituting the offenses charged and shall fully notify the defendant of the nature and cause of the accusation.” URCCC 7.06. Any potential ambiguity created by including the phrase “goods, merchandise and other valuable items” is negated by the indictment’s express reference to section 97-17-23 and the specific charging language that Johnson broke into a “dwelling house.” This case is distinguishable from Jenkins, where “no particular statute [was] referenced in the text of the indictment.” Jenkins, 888 So.2d at 1174 (¶ 9). There is no obligation that the State prosecute under the statute with the lesser penalty; it “may choose to proceed under either statute so long as the choice is clear and unequivocal.” Id. at 1174 (¶ 8) (citing Cumbest v. State, 456 So.2d 209, 222 (Miss.1984)). Here, the State made its choice clear by referencing section 97-17-23(1) in the indictment. Thus, the State was not obligated to try — and the circuit judge was not obligated to sentence — Johnson for burglary of other buildings or a business.
¶ 27. We further find the indictment’s language and its citation to the code section for burglary of a dwelling house fully notified Johnson of the offense charged. Indeed, the indictment twice referenced Callon’s “dwelling house.” And the charging document included all essential elements of dwelling-house burglary — breaking and entering a dwelling house with the intent to commit a crime. Thus, we find no reversible error in Count I.
B. Jury Instruction
¶28. Johnson alternatively argues the inclusion of the additional language about “goods, merchandise and other valuable items” created another element to the crime, which was neither proven at trial nor included in the jury instructions.
¶ 29. We find, in this instance, that this phrase is mere surplusage, which could have easily been removed from the indictment without changing the substance of the dwelling-house burglary charge. See Lee v. State, 944 So.2d 35, 38-41 (¶¶ 5-23) (Miss.2006) (addressing what is “surplus-age” and when it does not become a substantive element of the offense, distinguishing Richmond v. State, 751 So.2d 1038, 1046 (¶ 19) (Miss.1999)).
¶ 30. Johnson argues that because the State did not amend the indictment, the “goods, merchandise and other valuable items” language became an additional element the State had to prove. Richmond, 751 So.2d at 1046 (¶ 19). But he does not attack the sufficiency of the State’s evidence, which proved through Callon’s testimony that Callón stored his rifle, a “valuable item,” in his dwelling house. Nor does he discount Cestia’s testimony that Johnson stole the valuable item from a dwelling house. Thus, even were this language not surplusage, which we find it is *1216 here, Johnson cannot show the State failed to meet its evidentiary burden.
¶ 31. Further, Johnson failed to object to the companion dwelling-house jury instruction, S-l,[3] which unlike the indictment, did not include the “goods, merchandise and other valuable items” language. See Rubenstein v. State, 941 So.2d 735, 774 (¶ 169) (Miss.2006) (holding failure to object to jury instruction that constructively amended the indictment waived argument on appeal). This procedural bar notwithstanding, we first point out that, while “the jury should be instructed in language that tracks the indictment[, the] failure of the instruction to contain this language does not necessarily render it fatally defective.” Richmond, 751 So.2d at 1046 (¶ 21) (citing Duplantis v. State, 708 So.2d 1327, 1344 (¶ 75) (Miss.1998)). Second, the instruction included the statutory elements of dwelling-house burglary — (1) breaking and entering Callon’s dwelling house (2) with the intent commit theft.
¶ 32. Thus, we affirm Johnson’s conviction on Count I.
III. Count II — Possession of a Firearm by a Convicted Felon
¶ 33. Johnson next contends the firearm-possession charge in Count II fails to describe a statutory crime, and the jury instruction tracks neither the statute nor the indictment.
A. Indictment
¶ 34. In Mississippi, it is “unlawful for any person who has been convicted of a felony under the laws of this state, any other state, or of the United States to possess any firearm or any bowie knife, dirk knife, butcher knife, switchblade knife, metallic knuckles, blackjack, or any muffler or silencer for any firearm.... ” Miss.Code Ann. § 97-37-5(1) (Supp.2011) (emphasis added). Count II of Johnson’s indictment alleged that Johnson “did wil-fully, unlawfully, and feloniously possess a gun, a deadly weapon, after having been convicted of a felony under the laws of the State of Mississippi_” (Emphasis added.)
¶ 35. Johnson argues that the word “gun” in the indictment is ambiguous and not synonymous with the word “firearm” used in the offense’s statutory definition. Therefore, Johnson urges a felon who possesses a “gun” has not necessarily committed an indictable offense. Johnson also claims the statute does not subject a felon in possession of a non-enumerated “deadly weapon” to criminal liability.
¶ 36. Though section 97-37-5(1) prohibits felons from possessing a litany of enumerated weapons, Johnson’s indictment clearly notified him he was being charged with possessing only one weapon — a gun. Mississippi Code Annotated section 41-29-152(2) (Rev.2009), which enhances the penalty for drug possession if the offender also possesses a firearm, defines a firearm as “any weapon, including a starter gun, which will or is designed to or may readily be converted to expel a pro *1217 jectile by the action of an explosive.” While Johnson is correct that the term “gun,” may at times describe non-qualifying weapons, such as toy guns, BB guns, and the like, here, the indictment described the gun as a deadly weapon and, thus, sufficiently notified Johnson his charges concerned possessing a firearm. Indeed, he had just been arrested for stealing a rifle from Callon’s apartment, which gave rise to his burglary charge in Count I.
¶ 37. We find Count II sufficiently notified Johnson he was being charged with possessing a firearm.
B. Jury Instruction
¶ 38. Johnson also contends jury instruction S-3 neither tracks the indictment nor the statutory language in section 97-37-5. S-3 instructed the jury to consider whether Johnson “did possess a deadly weapon,” but unlike the indictment, it did not include the word “gun.”[4] Johnson claims he is entitled to a new trial because the jury convicted him of a crime without considering a necessary element of the offense — possession of a “firearm.”
¶ 39. It is not a crime for a felon to possess any “deadly weapon,” only the spe-cifíc wéapons listed by statute, namely, “any firearm or any bowie knife, dirk knife, butcher knife, switchblade knife, metallic knuckles, blackjack, or any muffler or silencer for any firearm_” Miss.Code Ann. § 97-37-5(1) (emphasis added).[5] So, we find S-3 did mis-describe the element regarding what Johnson had to possess to incur criminal liability.
¶ 40. As with S-l, the defense did not object at trial to S-3. While Johnson asks us to find plain error, at most we see harmless error, not warranting reversal.
¶ 41. The United States Supreme Court has recognized that “most constitutional errors can be harmless.” Arizona v. Fulminante, 499 U.S. 279, 306, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). And in Neder v. United States, 527 U.S. 1, 8-10, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), the Supreme Court held that a district court’s failure to charge the jury on the element of “materiality” in a tax-fraud case was harmless error. The Court concluded that “a jury instruction that omits an element of the offense ... differs markedly from the constitutional violations we have found to defy harmless-error review.”[6] Id. at 8, 119 *1218 S.Ct. 1827. Unlike defects that affect the trial framework by infecting the entire trial process, “an instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.” Id. at 9, 119 S.Ct. 1827.
¶ 42. The Supreme Court in Neder acknowledged it “ha[s] often applied harmless-error analysis to cases involving improper instructions on a single element of the offense.” Id. at 9-10, 119 S.Ct. 1827 (citing Yates v. Evatt, 500 U.S. 391, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991); Carella v. California, 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (per curiam); Pope v. Illinois, 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987)). In other cases, the Supreme Court has recognized that improperly omitting an element from the jury can “easily be analogized to improperly instructing the jury on an element of the offense, an error which is subject to harmless-error analysis.” Johnson v. United States, 520 U.S. 461, 469, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (citations omitted); see also California v. Roy, 519 U.S. 2, 5, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996) (per curiam).
¶ 43. To determine whether omission of an element from a jury instruction is harmless, the proper test is “whether it appears ‘beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.’ ” Neder, 527 U.S. at 15, 119 S.Ct. 1827 (quoting Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824,17 L.Ed.2d 705 (1967)). When an appellate court “concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless.” Id. at 17, 119 S.Ct. 1827. “[Tjhis approach reaches an appropriate balance between ‘society’s interest in punishing the guilty and the method by which decisions of guilt are to be made.’ ” Id. at 18, 119 S.Ct. 1827 (quoting Connecticut v. Johnson, 460 U.S. 73, 86, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983) (plurality opinion)).
¶44. The Mississippi Supreme Court has drawn from Neder in holding that failure to instruct the jury on an element of capital murder is subject to harmless-error analysis. See Kolberg v. State, 829 So.2d 29, 51 (¶¶ 39-40) (Miss.2002) (affirming capital-murder conviction even though jury instruction did not define the underlying felony). And this court, relying on Kolberg, has affirmed an aggravated-assault conviction, under harmless-error analysis, where a circuit judge wholly failed to instruct the jury on the elements of aggravated assault. Conerly v. State, 879 So.2d 1101, 1108 (¶¶ 25-26) (Miss.Ct.App.2004).
¶ 45. Mississippi Code Annotated section 97-37-5(1), criminalizes (1) the possession of firearms (2) by persons who have been convicted of a state or federal felony.[7] Examining the second element first, there is absolutely no dispute that Johnson had been convicted of a felony at the time he allegedly possessed the rifle. *1219 The parties stipulated to this based on Johnson’s prior sexual-battery conviction. As to the firearm-possession element, we find beyond a reasonable doubt this element was uncontested and supported by the overwhelming weight of the evidence. In addition to eyewitness and law-enforcement testimony, Johnson admitted, while on the stand, that he possessed the rifle. The Marlin .35 caliber rifle was introduced into evidence and positively identified as the one taken from Callon’s apartment and shown to police by Johnson in Memorial Park.
¶ 46. Based on the stipulation to Johnson’s felony status and the unchallenged and overwhelming evidence Johnson possessed the rifle, a proven firearm, we find beyond a reasonable doubt that the omission of the complained of element from jury instruction S-2 did not contribute to the verdict. Finding no fundamental unfairness, we affirm Johnson’s conviction on Count II.
¶ 47. THE JUDGMENT OF THE CIRCUIT COURT OF ADAMS COUNTY OF CONVICTION OF COUNT I, BURGLARY OF A DWELLING, AND SENTENCE OF TWENTY YEARS; AND COUNT II, POSSESSION OF A WEAPON BY A CONVICTED FELON, AND SENTENCE OF TEN YEARS, WITH THE SENTENCES TO RUN CONCURRENTLY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ADAMS COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS AND RUSSELL, JJ„ CONCUR. CARLTON, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J., AND RUSSELL, J. MYERS, J., NOT PARTICIPATING.

. Johnson has an extensive history of mental illness, having been hospitalized and committed for mental-health issues numerous times since his early teenage years, for which he has been on a regime of anti-psychotic and anti-depressant drugs.

. "[BJreaking and entering in the day or night time, any building within the curtilage of a dwelling house, not joined to, immediately connected with or forming a part thereof” is also a violation of Mississippi Code Annotated section 97-17-33(1).

.Jury instruction S-l reads:
Carson Johnson has been charged in Count I of the indictment with the felony offense of burglary of a dwelling.
If you find from the evidence in this case beyond a reasonable doubt that Carson Johnson:
1. on or about January 7, 2009,
2. in Adams County, Mississippi,
3. did break and enter,
4. the home of Lindsey Callón, being a dwelling house;
5. with the intent to commit a crime therein, namely theft;
then you shall find the defendant guilty of burglary of a dwelling.
If the prosecution has failed to prove any one or more of the above listed elements beyond a reasonable doubt, then you shall find Carson Johnson not guilty of burglary of a dwelling.

.Jury instruction S-3 states:
Carson Johnson has been charged in Count II of the indictment with the felony offense of possession of a weapon by [a] convicted felon.
If you find from the evidence in this case beyond a reasonable doubt that Carson Johnson:
1. on or about January 7, 2009,
2. in Adams County, Mississippi,
3. did possess a deadly -weapon,
4. when he had previously been convicted of a felony crime;
then you shall find the defendant guilty of possession of a weapon by [a] convicted felon.
If the prosecution has failed to prove any one or more of the above listed elements beyond a reasonable doubt, then you shall find Carson Johnson not guilty of possession of a weapon by [a] convicted felon.
(Emphasis added.)

. See Summerall v. State, 41 So.3d 729, 737 (¶¶ 28-32) (Miss.Ct.App.2010) (reversing defendant’s conviction for possession of a "dirk knife” by a convicted felon because evidence was insufficient to prove knife in defendant’s possession was a "dirk knife” prohibited by section 97-37-5).

. The Supreme Court has found an error to be "structural” and, thus, subject to automatic reversal, only in a "very limited class of cases.” Johnson v. United States, 5200 U.S. 461, 468-69, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (citing Gideon v. Wain-wright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (complete denial of counsel); Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (biased trial judge); Vasquez v. Hillery, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 *1218 (1986) (racial discrimination in selection of grand jury); McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (denial of self-representation at trial); Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (denial of public trial); Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (defective reasonable-doubt instruction to jury)).

. This prohibition applies "unless the person has received a pardon for such felony, has received a relief from disability pursuant to Section 925(c) of Title 18 of the United States Code, or has received a certificate of rehabilitation pursuant to subsection (3) of this section.” Miss.Code Ann. § 97-37-5(1).