IRVING, P.J.,
dissenting:
¶ 24. The majority reverses Snowden’s conviction for aggravated assault because, in the majority’s view, the indictment is defective because it does not include all of the elements of aggravated assault as set forth in the charging statute. I believe that the indictment substantially describes the offense of aggravated assault, as it sufficiently informed Snowden that he was charged with willfully and unlawfully causing bodily injury to Smith with a deadly weapon, a rifle, and that the rifle was a means likely to produce death or serious bodily harm. The inclusion of additional language in the indictment did not, in my view, cause Snowden to be misinformed as to the nature and cause of the accusation against him. Therefore, I respectfully dissent. I would affirm Snowden’s conviction of aggravated assault.
¶ 25. Snowden’s indictment provides in pertinent part:
William Edward Snowden on or about the 27th day of February did willfully, unlawfully, [and] feloniously cause bodily injury to Nelson Smith, a human being, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life with a deadly weapon, to-wit: a rifle, by shooting the said Nelson Smith *1260 with said rifle, said rifle being a means likely to produce death or serious bodily harm, contrary to and in violation of section 97-3-7(2)(a), Miss. Code Ann. (1972).
(Emphasis added).
¶26. The majority notes that the aggravated-assault statute has been amended since the date of the incident and the date of Snowden’s indictment. I agree. However, I point out that the amendment did not make any substantive changes to the elements of the aggravated-assault statute. The amendment only redesignated the subsection’s provisions. At the time of the incident, as well as at the time of the indictment, our aggravated-assault statute read as follows:
A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly[,] or recklessly under circumstances manifesting extreme indifference to the value of human life; (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm....
Miss.Code Ann. § 97-3-7(2) (Rev.2006). Conversely, our simple-assault statute read in part as follows: “A person is guilty of simple assault if he (a) attempts to cause or purposely, knowingly[,] or recklessly causes bodily injury to another; or (b) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm[.]” Miss.Code Ann. § 97-3-7(1) (Rev.2006).
¶ 27. In my opinion, the language in Snowden’s indictment that is reflected above in bold is sufficient to charge Snow-den with aggravated assault under section 97-3-7(2)(b), as it contains all of the elements specified in that provision of the statute. The fact that the indictment listed the charging statute as 97-3-7(2)(a) and also charged that the action which produced the bodily injury was done “recklessly under circumstances manifesting extreme indifference to the value of human life” is of no consequence, as there is no requirement that the statute be listed in the indictment and the additional language is mere surplusage. It is clear from my review of the record that Snowden fired the rifle “recklessly under circumstances manifesting extreme indifference to the value of human life” because Smith was directly in Snowden’s line of fire when he fired. The phrase — recklessly under circumstances manifesting extreme indifference to the value of human life — simply describes the circumstance of the shooting. It is not ambiguous language that could reasonably be interpreted as describing aggravated assault under section 97-3-7(2)(a), as there is only one incident addressed in the indictment: a shooting with a deadly weapon that caused bodily injury to Smith. Section 97-3-7(2)(b) is the only statute describing aggravated assault that has as one of its elements the use of a deadly weapon or other means likely to produce death or serious bodily harm. While it is true that the indictment also contains language that is only contained in section 97-3-7(2)(a) — recklessly under circumstances manifesting extreme indifference to the value of human life — it is crystal clear that the focus of the indictment is on the shooting with a deadly weapon, not on some other circumstance comprising an aggravated assault by engaging in reckless conduct manifesting extreme indifference to the value of human life.
¶ 28. This Court addressed an indictment’s defectiveness in White v. State, 958 *1261 So.2d 241, 244 (¶ 10) (Miss.Ct.App.2007).[3] In White, the indictment “charged White with a violation of section 97-3-7(2)(a)[.]” White, 958 So.2d at 244 (¶ 10). However, “[t]he language used in the indictment describing the crime state[d] that [the defendant] unlawfully, willfully, feloniously, purposefully, and knowingly caused bodily injury to [the victim] with a deadly weapon, to wit: by stabbing him with a knife.” Id. We acknowledged that the language in the indictment was “more in line with section 97 — 3—7(2)(b).” Nevertheless, we ultimately determined that the discrepancy was “of no moment” because
[t]he primary purpose of an indictment is to notify an accused of the charges against him in order to allow him to prepare an adequate defense. Furthermore, the incorrect citation of a statute number does not alone render an indictment defective, but rather is mere sur-plusage and not prejudicial to a defendant.
White, 958 So.2d at 244 (¶ 10) (internal citations and quotation marks omitted).
¶29. As stated, Snowden’s indictment charged Snowden with violating section 97-3-7(a), but the language used in the indictment, like the indictment in White, is more in line with section 97-3-7(b). In White, we did not find that citation to a particular subsection of the aggravated-assault statute was fatal even though the language of the indictment closely tracked the language of a different subsection of the statute. I see no reason to hold differently here regarding Snowden’s indictment. The indictment was sufficient not only to notify Snowden of the aggravated-assault charges against him, but also sufficient to allow him to prepare an adequate defense against the charges. That is the sole purpose of the indictment. That Snowden fully understood that he was charged with committing aggravated assault with a deadly weapon is reflected by his testimony, that he was not firing at anybody and did not intentionally shoot Smith.
¶ 30. We held similarly in Johnson v. State, 94 So.3d 1209 (Miss.Ct.App.2011), a case with a factual scenario similar to the one in the present case. In Johnson, the appellant was charged under Mississippi Code Annotated section 97-17-23 (Rev. 2006) with burglary of a dwelling house. Johnson, 94 So.3d at 1214 (¶ 24). The indictment charged that the appellant
did wilfully, unlawfully, feloniously and burglariously break and enter the dwelling house of Lindsey Callón wherein goods, merchandise and other valuable items were kept and stored, with the felonious intent of Johnson to wilfully, unlawfully, feloniously and burglariously take, steal and carry away said goods, merchandise and other valuable items and did in fact take, steal and carry away a rifle, and the personal property of Lindsey Callón, found and kept in said dwelling house.
Id. We noted that “the italicized phrases [in the indictment were contained] only in [Mississippi Code Annotated] section 97-17-33(1) [ (Rev.2006) ], the other-buildings burglary statute, and not the dwelling-house burglary statue.” Johnson, 94 So.3d at 1215 (¶25).
¶ 31. The appellant made three arguments:
[T]he ambiguity over which statute he was being charged forced him to go to trial without notice of the charges against him[;] ...
*1262 the ambiguity require[d] [that] he be resentenced under the lesser statute, [section 97-17-33(1), which carries a lesser sentence; and]
the inclusion of the additional language about “goods, merchandise and other valuable items” created another element to the crime, which was neither proven at trial nor included in the jury instructions.
Johnson, 94 So.3d at 1215 (¶¶ 25, 28). In rejecting the appellant’s arguments, we stated:
The purpose of an indictment is to provide the accused reasonable notice of the charges against him so that he may prepare an adequate defense. An indictment must contain the essential facts constituting the offenses charged and shall fully notify the defendant of the nature and cause of the accusation. Any potential ambiguity created by including the phrase “goods, merchandise and other valuable items” is negated by the indictment’s express reference to section 97-17-23 and the specific charging language that [appellant] broke into a “dwelling house.”
* * *
[T]he indictment’s language and its citation to the code section for burglary of a dwelling house fully notified [the appellant] of the offense charged. Indeed, the indictment twice referenced Callon’s “dwelling house.” And the charging document included all essential elements of the dwelling-house burglary — breaking and entering a dwelling house with the intent to commit a crime. Thus, we find no reversible error in Count I.
* * *
[The] phrase [“goods, merchandise and other valuable items”] is mere surplus-age, which could have easily been removed from the indictment without changing the substance of the dwelling-house burglary charge.
Johnson, 94 So.3d at 1215 (¶¶ 26-29) (internal citations and quotation marks omitted).
¶ 32. Just as in Johnson, the charging document here — the indictment — includes all of the essential elements of aggravated assault and fully informed Snowden that he was charged with aggravated assault, committed by knowingly shooting Smith with a deadly weapon, a rifle, that caused bodily injury to Smith. The additional language that described the circumstance of the shooting is clearly surplusage, and, as this Court said in Johnson, could have easily been removed from the indictment without changing the substance of the aggravated-assault charge.
¶ 33. The majority says that the dissent relies on Johnson, as well as on White, to support its conclusions that “(1) the indictment charged Snowden under both section 97-3-7(2)(a) and 97-3-7(b), and (2) the jury inherently found Snowden guilty of aggravated assault under section 97-3-7(2)(b).” Maj. Op. at (¶ 17). Suffice it to say that the dissent reaches no such conclusion. Simply stated, it is the dissent’s view that White and Johnson are authority for the proposition that the indictment is legally adequate to have apprised Snowden of the charges against him so as to have enabled him to prepare a defense. As stated, Snowden’s testimony that he was not firing at anybody and did not intentionally shoot Smith provides all the needed proof that Snowden knew that he was being charged with attempting to cause or knowingly causing bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm.
¶ 34. Finally, the majority says that “even if the indictment is legally sufficient to charge Snowden with aggravated assault under section 97 — 3—7(2)(b), the undis *1263 puted proof is insufficient to warrant a conviction under that subsection.” Maj. Op. at (¶ 20). To support this proposition, the majority relies on the testimonies of Snowden and Deputy Pinson. It is elemental that the jury is the judge of the credibility of the witnesses. The jury was not required to accept as true Snowden’s testimony regarding his intent or his statement to Deputy Pinson that he only intended to scare off the individuals that had chased his stepson onto Snowden’s driveway.
¶ 35. This Court recently addressed the manner in which intent may be proven. In Shaw v. State, _ So.3d _, _ (¶ 13) (Miss.Ct.App.2013), we stated:
Intent ordinarily must be inferred from the acts and conduct of the party and the facts and circumstances attending them. Even if intent is not expressly evident, it may be proven by showing the acts of the person involved at the time, and by showing the circumstances surrounding the incident. Whether a person intended to commit an act is a question of fact to be gleaned by the jury from the facts shown in the case. The presumption of the law is that each person intends the natural consequences of his actions.
(Internal citations and quotations marks omitted).
¶ 36. Prior to the shooting, Snowden’s stepson had called home and advised that he was being chased by some individuals. Snowden got his gun, a .22 rifle, and waited for his stepson to arrive. It is reasonable to assume that he believed that the individuals might chase his stepson home, and he wanted to be ready for his stepson’s pursuers should they be brazen enough to do so. When the pursuers did exactly what Snowden suspected that they might do, he fired three shots — not one, not two, but three — in the direction of the pickup truck that the pursuers were in, which also was in the direction of Smith’s car. Since this occurred around 12:45 a.m., the heart of the night, it cannot be reasonably argued that Snowden did not or could not have seen the headlights of Smith’s vehicle, which was passing on the highway by Snowden’s driveway. On this evidence, the jury could reasonably conclude that when Snowden fired the three shots, he was attempting to shoot his stepson’s pursuers, notwithstanding his testimony that he was only attempting to scare them away and was not trying to shoot anybody. If that were the case, why would he not simply wait until Smith’s vehicle had passed and then shoot? The jury could reasonably assume that Snow-den was angry and was attempting to get his stepson’s pursuers at all cost. Otherwise, why would he shoot toward a passing vehicle that was directly in his line of fire?
¶ 37. The majority says there is no evidence that Snowden fired directly at the occupants of the white pickup truck. I agree that there is no direct evidence of that, but there is adequate evidence from which the jury could have inferred that that was the case. Snowden’s wife, Elayne, testified as follows:
I was out on the front porch waiting. And I saw my son pull in, I saw a car go past, and then the pickup truck came and started to turn into the driveway. That is when my husband fired the warning shots, and the truck stopped turning into the driveway and continued — I started hearing more shots, and I looked over and realized, when I looked back at the pickup truck, there were red flashes coming from the guy with the pickup truck. That it was not Eddie shooting anymore. That was them shooting, and I just hit the patio.
*1264 Q. And you say you saw your husband when he shot the gun. How did he hold the gun?
A. I did not actually see him holding the gun. I heard the shots and realized that that’s what was — because he was in front of the garage. The porch light does not reach over that way.
¶ 38. Snowden testified in pertinent part as follows:
Q. Why did you reach and get the rifle?
A. Because [my wife] had — was talking to him. And said they were shining a laser light in his face, and the only thing I could figure of [sic] with a laser light would be on a weapon. And when they hit the car, they hit the glass on the passenger — or driver’s side about four inches from the post. If it’d been a little bit further, it would have come through the glass and hit him in the face.
Q. Okay.
A. But when they hit the car, I knew they intended bodily harm. And that’s why I picked up the rifle and went outside. I mean, you don’t go up and strike a car like that, moving, unless you intend to hurt somebody.
Q. And that’s the only reason you—
A. That’s the only reason. I didn’t know what these idiots had in mind or what, you know, but I knew if they come up to my house, I had to do something to protect my family.
Q. Describe a warning shot?
A. Just pointed the rifle out and pulled the trigger....
Q. And did you know anybody was on the highway — on the Chunky-Duffy Road at the time you fired the gun?
A. No. Like I said, I was not firing at anybody. I was simply firing because I didn’t know what the intentions of these people were that was coming after Chris. Had no idea what their mind was, other than the fact I knew they went — meant bodily harm.
¶ 39. It is clear from the testimonies of Snowden and his wife that the jury, as noted, could reasonably infer that he intended to shoot the occupants of the white pickup truck if the truck followed his stepson onto their driveway. First, based on Snowden’s wife’s testimony, the jury learned that Snowden stood where he could not be seen by the occupants of the truck, as the porch light did not shed light in the area where he stood, waiting "with the rifle. This would indicate that Snow-den was attempting to gain a tactical advantage in what he thought could develop into a shootout with the occupants of the truck. Second, it is a reasonable inference that if Snowden believed that the occupants of the pickup truck had a weapon and were attempting to cause bodily injury to his stepson, he would shoot to stop them, not simply fire several warning shots. Further, the jury heard evidence that Snowden’s home is located on a hill that overlooks Chunky-Duffy Road, providing an unobstructed view of the road below. Therefore, based on the physical position of Snowden’s home, Snowden would not have been able to strike anyone traveling on Chunky-Duffy Road if all he had done was raised his rifle and fired several shots. He had to aim his gun downward. Therefore, the physical evidence contradicts Snowden’s testimony that he was not shooting at anyone and that he simply raised his gun and fired. A fair and impartial consideration of Snow-den’s testimony compels the conclusion that he was not attempting to fire only warning shots. He had concluded, prior to *1265 the white pickup truck turning onto his driveway, that the laser light that the occupants of the truck had shined in his stepson’s face was attached to a weapon. Therefore, he believed them to be armed and dangerous.
¶40. Applying the law of transferred intent, the evidence was sufficient for the jury to find Snowden guilty of aggravated assault against Smith, even though he intended to shoot his stepson’s pursuers instead. Clearly, this was the theory that the State pursued, because it asked for, and the circuit court gave, the following instruction:
The Court instructs the jury that if one intends to injure a person with a deadly weapon, and by mistake or inadvertence injures another person with such weapon, his intent is transferred from the person to whom it was directed to the person actually injured, and he may be found guilty of aggravated assault. You may find a person guilty of aggravated assault even if that person intended to injure another.
The majority points to the State’s closing argument in an attempt to discount the notion that the State’s case was based on transferred intent, that is, that Snowden intended to shoot the occupants of the white pickup truck, not Smith. Suffice it to say that closing argument is not evidence. But there was sufficient evidence offered from which reasonable persons could infer that Snowden was attempting to shoot the occupants of the white pickup truck. The jury found Snowden guilty of aggravated assault against Smith. It could do that only if it also found that Snowden was attempting to shoot the pursuers of his stepson but failed, as there is absolutely no evidence that he was attempting to shoot Smith, nor is there any evidence from which that conclusion can be inferred.
¶ 41. For the reasons presented, I dissent. I would affirm the judgment of the circuit court.
LEE, C.J., AND CARLTON, J., JOIN THIS OPINION.

. I note that the author of the opinion in White is the author of today's majority opinion.